PORTER and another *v.* POTTER, impl'd, &c.

The person transferring a promissory note is not the assignor of a thing in action, within the meaning of § 399 of the Code of Procedure, so that his examination as a witness in behalf of the person deriving title from him would (independent of the amendment of 1857) entitle the adverse party to testify in his own behalf.

APPEAL from the Supreme Court. Action on a promissory note by an indorsee against the makers. The note was payable to the order of N. P. Rust, who had indorsed it in blank. It had been discounted by the Bank of Salina. One Quick paid the amount to the bank, and received the note before maturity, and afterwards transferred it in writing to the plaintiffs in payment of a debt. The defence of N. J. Potter, one of the makers, and the respondent in this appeal, was, that his name was signed by another person without his authority. The plaintiff called Quick, who testified to conversations with Potter, in which the latter recognized the note as paper upon which he was liable. Potter then offered himself as a witness on his own behalf, and was

received by the referee against the objection of the plaintiffs, who excepted to the ruling. He swore that the note was not signed by him or by his authority, and he denied having made the admissions which Quick had sworn to. The referee reported in favor of N. J. Potter, and against the other defendant.

Judgment having been rendered on the report, and affirmed at the general term, the plaintiffs appealed from the judgment so far as it was against themselves.

*J. H. Reynolds*, for the appellants.

*J. S. Burritt*, for the respondents.

DENIO, J. This case will not be important as a precedent, for since it was tried the law has been changed so as to permit parties to be sworn in their own favor. Still, if an error was committed we are bound to reverse the judgment, though on a future trial Potter will be a competent witness by force of the statute. We cannot say but that the plaintiffs may be prepared with other testimony, which they left behind on the former occasion, from their reliance on Quick, and their belief that Potter could not lawfully be heard to contradict him.

The question, then, is whether Quick was an assignor of the note within the meaning of section 399 of the Code. If he was, then, as the plaintiffs called him as their witness, the defendant was entitled to be sworn for himself. One who indorses a note or bill to another, or transfers such paper by delivery when indorsed in blank, or when payable to bearer, is in some sense an assignor. The act, though not an assignment either in a technical sense or in common parlance, is such in substance and effect. There is nothing in the force of the term which would compel us to hold it applicable to bills and notes, or which would forbid us from so applying it, if we should think that the scope and inten-

tion of the provision required one construction or the other. Certainly it is not using the word in its primary or most usual sense, when it is employed to describe the transfer of a note, and we are therefore at liberty to seek in other parts of the statute, and in the antecedent state of the law, for the intention of the legislature upon the point in controversy. Notes have been negotiable, so as to give the holder a right of action in his own name, since the statute of ANNE, about an hundred and fifty years ago. In an action by the holder, a prior indorser, if not interested, was a competent witness for the plaintiff. That was familiar law when the Code was enacted. There is no certain or probable evidence that the legislature intended to change the rule in such cases, further than to provide that interest should no longer be an objection to the competency of a witness. But other con tracts and choses in action were not assignable at law, except in a few special cases provided for by statute. Though they had become assignable in equity, the owner was obliged to prosecute his action in the name of the original party, and the assignor was precluded from testifying, on account of being a party to the record. The defendant was, of course, incompetent; and thus the parties were left to make out their case, where there was a controversy, by the testimony of other persons. But the Code required that every action should be prosecuted in the name of the real party in interest ($ 111); and thus a class of persons who were before incompetent, as nominal plaintiffs, were enabled to testify. But it was immediately apprehended that parties to contracts, where there was a dispute, would assign them for the very purpose of testifying themselves to support the action brought upon them; and it was therefore provided, in the section which abolished the objection of interest, that where a thing in action was assigned for such a purpose, the assignor should not be competent to be sworn. ($ 352 *of the Code of* 1848, *Laws, p.* 560.) But it was soon seen that it was not an easy matter to be shown that a given assignment

Porter *v.* Potter.

was made from that motive. The assignor was apt to swear, and perhaps to think, that the leading reason for the assignment was not to enable himself to give testimony; even in cases where he supposed the ends of justice were greatly promoted by his being enabled to testify to the truth in the controverted matter while the defendant could not be heard at all. In point of fact suits, by assignors of controverted claims, where the assignor was the principal witness, became alarmingly frequent, and considerable injustice was supposed to be unavoidably done in such cases. The remedy which the legislature applied was the provision under examination, by which the opposite party was allowed to be heard on the same matter as to which the assignor of his adversary had testified. Now, the evil which suggested this remedial provision had been introduced by the Code in giving an assignable quality to contracts which were not assignable in their own nature. The provision was, I think, designed merely as a modification of the new principle which had been thus introduced. Choses in action, not in themselves negotiable, were made assignable, but with this qualification, that if the assignee should avail himself of the testimony of the party from whom he derived his title, his adversary might offer himself as a witness to the same matter. Thus understood, the provision does not reach the case of bills and notes which were negotiable before the Code. No inconvenience of the kind sought to be remedied had been perceived in the law of negotiable paper, and inasmuch as the provision does not necessarily embrace such instruments, I think that we should not so apply it.

There is, besides, a marked distinction between negotiable paper and other contracts, in the point under consideration. The former is issued for the purpose of circulation. The promise is in terms made to the indorsee, or any person who may become the bearer, as well as to the payee; and when the amount is claimed of the maker, by a person who makes title according to the terms of the paper, he

Porter *v.* Potter.

does not strictly assert a derivative title, but he seeks to enforce a contract running to himself. In other contracts it is supposed that the parties to the bargain are those between whom it will be finally adjusted, and the assignment is an exceptional thing allowed by law upon equitable reasons but not primarily contemplated by the parties. In many cases there is nothing in the nature of an assignment between the payee and the holder. This is the case where the note is indorsed for the accommodation of the maker. Upon the defendants' position, if Rust, who seems to have indorsed for the accommodation of the maker, had been examined by the plaintiffs, that fact would have authorized the defendants to be sworn for themselves. But Rust was in no sense an assignor. His real relation to the parties was that of surety for the makers to the holder.

I have looked into the several cases where this question has been determined different ways in the Supreme Court and in the New York Common Pleas, but do not find anything to change the views which have been expressed. They are, I believe, all referred to in *Hicks* v. *Wirth*, (10 *How. Pr. R.*, 555), and in *Calkins* v. *Packer*, (21 *Barb.*, 275), in both of which cases the law was laid down as we understand it to be. The judgment of the Supreme Court should be reversed and a new trial ordered.

COMSTOCK and SELDEN, Js., did not sit in the case; all the other judges concurring

Judgment reversed and new trial ordered.