DELOS BARTLETT *v.* LEVI B. TARBOX.

A person transferring a promissory note is not the assignor of a thing in action within the meaning of section 399 of the Code of Procedure.

The admission of distinct facts during a negotiation for a settlement, is competent evidence against the party making it.

APPEAL from judgment of Supreme Court. The action was brought in December, 1851, to recover the amount of four promissory notes made by the defendant; one dated March 2d, 1846, for $15; another August 10th, 1846, for $150; another November 18th, 1846, for $13; and another April 2d, 1849, for $99.84.

The defense set up was payment and a set-off against Elijah Brown, an attorney-at-law, the former holder of the notes, and that the plaintiff was not the owner and holder. One of the allegations in the answer was that Brown, at the time of the sale and delivery of the notes to the plaintiff was, and still is justly indebted to the defendant in the sum of about $300 for one promissory note executed by one Solon P. Huntington, which the defendant sold and delivered to Brown in the month of June, 1849, and which note was paid by Huntington to Brown, and which remains unpaid to the defendant.

The cause was referred to S. H. Harrington, Esq. On the trial it appeared that Brown, on the 25th November, 1851, for a valuable consideration, sold and transferred the notes in suit to the plaintiff; and the principal matter litigated was the state of the accounts between Brown and the defendant when this transfer was made. Brown had been the attorney and counsel of the defendant for several years, and it was not disputed that the notes were valid claims against the latter in his hands; but it was claimed that allowing the Huntington note and the defendant's account against Brown for services as a set-off to the notes and Brown's account against the defendant, left nothing due from the latter to Brown, but on the contrary, there would be a balance in his

favor. On the other hand, Brown claimed that in June, 1849, when the Huntington note was sold to him, the defendant was indebted to him in a sum exceeding the amount of such note for certain bills of costs due and owing to him from the defendant, and for services rendered for the latter as attorney and counselor-at-law, and for moneys paid and expended for him; that by agreement between the parties, that note was to be applied toward the payment of this indebtedness, and the note was applied thereon in pursuance of such agreement at the time of the receipt thereof. It was further claimed that crediting the defendant all that Brown ever received from him, even including the Huntington note, left a balance due Brown above the notes of over $50 at the time he transferred them to the plaintiff.

The referee found as facts, that the defendant made the notes set out in the complaint; that they were sold and delivered to the plaintiff before the commencement of the action; that he purchased all of them for a valuable consideration paid by him, and is the owner and holder thereof; that no part thereof has been paid, and that the total amount due on them (including interest), is $485.80.

The referee further found that the defendant, some time in the month of June 1849, sold and delivered to Elijah Brown, a promissory note made by one Solon P. Huntington, for the payment of $283.83, which was subsequently paid by said Huntington to said Elijah Brown; that at the time of the sale of said note to said Brown, the defendant was indebted to the said Brown in a sum of money exceeding the sum of $283.83, for certain bills of costs due and owing from the defendant to said Elijah Brown, and for services, work and labor, rendered, done and performed by said Brown, for said defendant, as attorney and counselor-at-law; and for money paid and expended by said Brown for him, toward the payment of which the said note of the said Solon P. Huntington, by an agreement between the said defendant and said Brown, was to apply; that said note was applied thereon, in pursuance of said agreement, by said Elijah Brown, at the time of the receipt thereof.

The referee further found that the defendant failed to prove any matter of set-off in his answer mentioned.

Upon these facts his conclusion of law was, that the plaintiff was entitled to recover of the defendant the amount of the notes; and that the defendant was indebted to the plaintiff in the sum of $485.85, being the interest and principal due thereon.

On the trial, the plaintiff offered Elijah Brown as a witness in the action. The defendant's counsel objected to his being sworn and examined, on the ground, first, that the proof of service of notice of his examination was insufficient; second, that the notice was not sufficient, and not a compliance with the statute, for the reason that it did not specify the points on which the witness would be examined. The objections were overruled, and Brown was sworn and examined as a witness. (The notice was that Brown would be examined generally as a witness on the trial of the cause for and on behalf of the plaintiff thereon.)

One Stephen Estes testified that he was present at an interview in Brown's office in September or October, 1851, between the defendant and Brown. During the interview the account books were produced between Brown and defendant, and the accounts were looked over from the books. He recollected *that defendant said Brown's account was all right, and he would allow it if Brown would allow his.* At this stage of the witness' examination, the defendant proposed to put preliminary questions to show that the parties were trying to settle. This was allowed, and the witness said, "they appeared to be trying to settle at the time, and had the books out for that purpose." The defendant then objected to the evidence, and to all the evidence on the same subject, for the reason that the parties were negotiating a settlement. The objection was overruled, and defendant excepted. The witness continued: "I did not read over the whole account." The defendant said: "Prophet, it's all right, if you will allow my account I will allow yours." The defendant asked the referee to strike out the last evidence, on the ground that it is a proposition to settle, and a conditional

offer, which was refused and defendant excepted. · · The defendant's account or claim, made at this time, consisted of two items; one of $25 for promoting Brown's election :as district attorney, and another of $50, for promoting John. Brown's election as sheriff. ·

When Brown was cross-examined, the plaintiff offered his book containing the accounts, on pages 86 and 88, looked over by defendant and Brown, and examined, at the time spoken of by the witness Estes, not as evidence of any items n ·t proved, but to identify the accounts and as confirmatory testimony. The defendant's counsel objected to it as being incompetent and immaterial, and not being proved according to the rules of evidence, and that from Brown's own evidence the book contains false charges, and is not evidence in the cause, and that the admissions in reference to it were made during an effort to settle. The witness being further interrogated said: That the book was the same book that was produced at the office, and that it contained the same charges, and was all correct, and were all looked over by the defendant, and there had been no alteration in the account since, but it was in the same condition as when looked over by defendant. The referee overruled the objection and decided to receive the book for the purposes offered, and defendant excepted.

The case states that near the close of the trial, the plaintiff offered in evidence all the papers, receipts and bills of costs heretofore proved and marked by the referee. Objected to by the defendant separately and collectively, on the ground that they are incompetent and immaterial evidence, and the acts and declarations of third persons. Objection overruled, and defendant excepted.

Philip G. Schermerhorn testified on his examination by defendant to a declaration made by Brown in the summer of 1851, to defendant, that if Huntington had paid up his note in full, there would be a small balance due the defendant. Subsequently the plaintiff called *John Brown,* and offered to show by him a conversation with Schermerhorn and to contradict him in the evidence given by him. The testi

mony was objected to by the defendant on the ground that Schermerhorn's attention was not called to the alleged conversation, nor the time or place of it; and the objection was sustained. Afterward the witness was recalled by plaintiff, and, without objection, testified to a conversation with Schermerhorn the fall before the trial, in which the latter stated in substance, that he had never heard any conversation between defendant and Brown in relation to these matters, and knew nothing about them.

Judgment was entered on the report of the referee, and the defendant appealed to the General Term of the Supreme Court, where the judgment was affirmed. He now appeals to this court.

*Edgar F. Brown*, for the plaintiff.

*L. L. Bundy*, for the defendant.

Wright, J.　The defendant's notes were transferred to the plaintiff in November, 1851, by Elijah Brown, a former owner and holder. Two defenses were interposed, First, that the plaintiff was not then owner, but that they were the property of Brown; and, second, a set-off against Brown. The set-off claimed was the amount of a note ($283.83) made by one Huntington, which it was alleged the defendant sold to Brown in 1849, and which had been paid to the latter; also, for moneys received by Brown, to and for the use of the defendant, and money paid by the latter to the former during the six years prior to 1851; and also, for work and labor done and performed by the defendant for Brown, in the years 1846, 1847 and 1848. The finding of the referee disposes of both these defenses adversely to the defendant. It is found that the plaintiff was, at the commencement of the action, the owner and holder of the notes, having purchased them for a valuable consideration; that at the time of the sale of the Huntington note to Brown, the defendant was indebted to him in a sum of money exceeding the amount of the note, for certain professional services, toward the payment of which, by an agreement between the parties, the note

was to apply; and Brown, at the receipt thereof, in pursuance of the agreement, applied it in part payment of the defendant's indebtedness; and that the defendant failed to prove any matter of set-off mentioned in his answer. The findings are not the subject of review in this court. It was competent for the Supreme Court to have reviewed the case, both upon the facts and the law, but our jurisdiction extends only to the determination of legal questions. We can not look into the evidence to determine whether the facts were or were not correctly found; but taking them as found by the referee, our power is limited to the inquiry whether he deduced the proper legal conclusions from them. That there was no error in this respect is clear; and there must be an affirmance of the judgment, unless some error was committed on the trial to the prejudice of the defendant.

The defendant's counsel, in his points, insists that there were several errors of the latter description. Those pointed out will be briefly noticed:

1. Elijah Brown, the person who transferred the notes to the plaintiff, was sworn and examined as a witness in his behalf, the defendant objecting on the grounds of the defectiveness of the notice given of his examination, in not specifying the points on which he would be examined. The objection assumed that Brown was the assignor of the plaintiff's demand within the meaning of section 399 of the Code, as the section read, and the law stood at the time of the trial; and that in all cases the ten days' notice of the intended examination of such assignor must be given. But it is now settled that the person transferring a promissory note is not the assignor of a thing in action within the meaning of section 399. (*Porter* v. *Potter* 18 N. Y., 52), and that it is only in cases where such assignor is to be examined against an assignee, or an executor or administrator, that notice of his intended examination is required to be given. (*Varlear* v. *Livingston*, 3 Kern. 248; *Bidwell* v. *The Astor Mutual Insurance Company*, 16 N. Y., 263.) The witness, therefore, not being the assignor of the plaintiff, or if he was, the defendant not being an assignee, or an executor or administrator, no notice of his

intended examination was necessary. He was a competent witness for the plaintiff without any notice; and whether the one attempted to be served was defective in the particular suggested or not was entirely immaterial.

2. A witness by the name of Estes detailed the particulars of an interview between the defendant and Brown at Brown's office, about the first of October, 1851, some two months before the transfer of the notes. The parties were trying to settle. The account books of Brown were produced and his account with the defendant looked over and examined as his book exhibited it. The defendant claimed against Brown $75 for political services, in promoting his election to the office of district attorney, and that of his brother John to the office of sheriff, and this was all the claim he made. *Estes.* further testified: "I recollect defendant said Brown's account was all right, and he would allow it, if Brown would allow his." This evidence was objected to by the defendant for the reason that the parties were negotiating a settlement; but the objection was overruled and the evidence received; it was not objectionable, at least for the reason assigned. The fact that the parties were attempting to settle was no ground for excluding any admission by the defendant of the correctness of Brown's account against him. It was not an offer or proposition made for the purpose of effecting a settlement, but the declaration of a fact after looking over the items, viz.: that "Brown's account was *all* right." The admissions of distinct facts during negotiation for a settlement are always competent evidence against the party making them. In this case the proof was extremely pertinent, as a distinct admission that all the items of account then looked over were correct; and also, as tending to show that the defendant, then (some two months before the commencement of the action) made no claim or pretense that he had paid anything on the notes in suit, or that he had any set-off or claim against Brown, not credited on Brown's books, except the claim for political services.

3. At the close of the examination of Estes and Brown, the plaintiff offered Brown's book containing the accounts looked over and examined by defendant as testified to by both those witnesses, not as evidence of any items not proved, but to identify the accounts, and as confirmatory testimony. This book had been in court and referred to on the examination of both Brown and Estes. The defendant objected to it as being incompetent and immaterial, and not being proved according to the rules of evidence, and that the admissions in reference to it were made during an effort to settle. After receiving further proof that the book was the same produced at Brown's office, that it contained the same charges, and were all correct and were all looked over by the defendant, and there had been no alteration in the account since such examination, the referee overruled the objections, and decided to receive the book for the purposes offered. This was not error. The book had been looked over by the defendant and the accounts admitted to be correct, on which were all the credits of the defendant, which he claimed except for pretended political services. It showed a balance due to Brown over and above the notes in suit, as Brown had previously testified was the fact, of $50.56; but what these items were that went to make up such account, and which the defendant admitted was all right, could not be understood by the referee except by an inspection of the book. It was not offered as any evidence of itself, of the correctness of its contents, but to show what were the items of account referred to in the testimony of Estes and Brown. It is to be observed that the evidence as to the state of the accounts between Brown and defendant in October, 1851, was principally pertinent as bearing on the question, whether at the time of the transfer of the notes, Brown had not an unsettled account against the defendant for professional services, more than enough to balance any claims of the latter against him, and which could be the subject of a set-off.

4. The evidence tended to show that the note against Huntington, was by agreement, received by Brown from the defendant toward costs due him from the latter in the Angell

chancery suit, and that Brown was to make that application of a portion of its proceeds. With the view of showing the application of the note on these costs, the plaintiff offered Brown's chancery register in evidence. It was objected to for the same reason as his account book before mentioned. I think the evidence was admissible, but if otherwise, it could not possibly have prejudiced the defendant. Brown had previously testified to the application by him of enough of the note to satisfy the bill of costs in the Angell suit, and the entry in his chancery register of the fact had been proved without objection.

5. The case states that before the termination of the trial, the plaintiff offered in evidence all the papers, receipts and bills of costs before proved and marked by the referee, and that the defendant objected to them, on the ground that they were incompetent and immaterial evidence, and the acts and declarations of third persons. There was no force in the objection. There were receipts for money which Brown testified he paid for the defendant, and his bills of costs against him. After the bills of costs were proved without objection, they were properly produced and put in evidence. Had they been received as proof of the services, and the value, from the amount at which they were taxed, without other proof, there might have been some ground for the objection; but after proof of the services, and the value, and taxation, and the charges on the account book of such bills, and credits to the defendant of the amount belonging to him, and his declaration that the account was all right, it cannot be pretended that it was illegal to produce the bills as taxed.

6. It is insisted that the referee erred in receiving the evidence of the witness, John Brown, to contradict that of the defendant's witness, Philip G. Schermerhorn. But a complete answer to the point, is that Brown's testimony was received without objection. When the plaintiff first proposed to show by Brown, a conversation with Schermerhorn, with a view of impeaching or discrediting his testimony, the defendant objected on the ground that Schermerhorn's attention had not been called to the alleged conversation, or the

time or place of it; and the objection was sustained. At a subsequent stage of the trial Brown was recalled by the plaintiff, and testified to a conversation with Schermerhorn the fall before the trial, in which the latter stated in substance, that he had never heard any conversation between Elijah Brown and the defendant, and should not swear to any; that he was not a witness in the case, nor did he know anything about it. It was this evidence to which no objection was made by the defendant, that is now claimed, the referee wrongly received. Not having objected, but on the contrary consented to its being given, it is quite too late, on appeal, for the defendant to allege its reception as a ground of error.

These were all the rulings on the trial now claimed to have been erroneous. I am of the opinion that the defendant's exceptions to them were not well taken. The judgment of the Supreme Court should be affirmed.

All concurring,

Judgment affirmed.