# IN GENERAL TERM.

MATILDA KEMP, Appellant, *v.* CHARLES DICKSON, JAMES C. DICKSON, WALLACE E. DICKSON, and CHARLES GRIFFIN, Appellees.

Appeal from BLAIR, Judge.

*Debt, assignment, admission—Husband and wife—Agency.*

An assignment of a debt, carries with it all collaterals given to secure its payment.

An assignment of a note, "without recourse," will not release the collateral given to secure the payment of the note, unless so stipulated, at the time of assignment, and without such agreement, the security passes with the note.

A person holding collaterals to secure the payment of a debt, holds them simply as a special trustee.

Where a statement is made by the assignor, to the agent of the assignee, pending the negotiation for the note, that he held a certificate as collateral for the security of the payment of the note,

*Held:* Such an admission is competent in evidence to show notice to the assignee of such security, when he purchased the note.

A husband who acted as an agent for his wife, in the transaction of her business, is not a competent witness in a suit brought by the wife, to prove the transactions of such agency.

*N. B. & E. Taylor*, for appellant.

*Mitchell & Ketcham*, for appellees.

RAND, J.—This was a suit brought by Matilda Kemp against Charles Dickson, James C. Dickson, and William E. Dickson. The complaint is in two paragraphs. The first alleges that plaintiff is the owner of a certificate of twenty shares of the capital stock of the Hydraulic Woolen Mills Company, of Columbus, Indiana, of the value of $1,000, of which the defendants have the possession without right.

The second paragraph is the same, in substance, as the first, with the further allegations, that on the same day plaintiff became the owner of said certificate, M. Kemp & Co. executed to defendants their note, at one day, for $1,367.53, and that plaintiff and Mathew Wilson endorsed said certificate to defendants by collateral security for said note, with authority to sell the same at best rates, first advising M. Kemp & Co. of the amount that could be realized for it. "And plaintiff further says that before any sale was made that defendants assigned the note, without recourse, to Charles Griffin, and defendants continued to hold said certificate, and that plaintiff had demanded the

same of defendants, but they refused to surrender it, but converted it to their own use."

Defendants answered the first paragraph of complaint by a general denial, and also that said certificate was the property of Charles Griffin. There was a demurrer to this last paragraph which was overruled and excepted to. It is not now urged that the overruling this demurrer was error.

Defendants demurred to second paragraph of complaint, but it was overruled and excepted to. Charles Griffin asked to be made a party, which was done, and he filed his answer and cross complaint, alleging that he was the holder of the note for $1,367.53, which had been assigned him by the Dicksons, on M. Kemp & Co.; that plaintiff, Matthew Wilson, Joseph Green and Hiram Solend were partners, and composed the firm of M. Kemp & Co.; that said note is wholly unpaid; that plaintiff, on the 12th of January, 1871, had assigned said certificate to his co-defendants, the Dicksons, as collateral security for the payment of said note; that on the 20th of January, 1871, the Dicksons assigned said note and certificate to defendant, and that said Dicksons agreed to hold said certificates as defendant's agents.

The Dicksons answer the second paragraph of the complaint, and Griffin's cross complaint, stating that they held the certificate as collateral security for the payment of said note, and that on the 21st of January, 1871, they assigned said note and certificate to Griffin, and that they now have no interest in said certificate, and bring the same into Court. There was a general denial to Griffin's cross complaint, by plaintiff, and a reply in general denial to Dicksons' answer.

The case was, at Special Term, submitted to Court for trial and judgment, and the Court found for defendant, and decreed that Dicksons should hold said certificate as collateral security for the payment of said note until it was paid, and a judgment for costs was rendered against plaintiff.

From this decree there was an appeal by plaintiff to General Term. The evidence is all in the record.

It is insisted that the finding of the Court was contrary to the evidence. We have carefully read it, and we are of opinion that the evidence sustained the finding of the Court below. The evidence shows, and, in fact, the second paragraph of complaint says, that the certificate of stock was transferred to the Dicksons as collateral security for the payment of said $1,367.53 note, and it claims that the transfer of the note to Griffin, without recourse on the Dicksons, entitled the plaintiff to a return of the certificate.

There is some discrepancy in the evidence as to what was said at the time of the assignment of the note, in relation to the certificate.

No witness, however, says that Griffin released or abandoned any rights he had to the certificate. The evidence does show that Griffin, before he purchased the note, was notified that Dicksons held the certificate as collateral for its payment.

In *Parmler* v. *Down*, 23 Barbour, 463, the Court say : " It is entirely clear, that when a debt is assigned, the assignment carries with it all the collateral securities held by the assignor, for its collection, although they are not mentioned or referred to in the assignment—upon the ground that in such cases the securities are incidents to the debt, which is the principal. Hence when one holds a note or bond against another, secured by mortgage upon real or personal property, and afterward assigns the bond or note, or a judgment recovered upon it, to a third person, without any reference to the mortgage, the assignment of the debt, whether in its original form, or merged in a judgment, carries with it the mortgage. See also *Langdon* v. *Boel*, 9 Wendell, 80. In this last case, the Court say, if, by special agreement, the security is not to pass to the assignee, then the mortgage is, by such agreement, *ipso facto* extinguished. But in the case at bar, as we have already said, there was no such agreement.

It seems clear to us that the security passed to the assignee of the note.

It is further urged that the evidence shows that the Dicksons held this certificate as special trustee. This is true, but so does every party, who holds securities as collaterals, to secure the payment of a debt.

At the trial the plaintiff introduced as a witness, David Kemp, who was the husband of plaintiff, and offered to prove by him that plaintiff was the owner of the certificate of stock in controversy—that he, as agent of plaintiff, transacted the business with the Dicksons, plaintiff not being personally present—that before the commencement of this suit, he, as plaintiff's agent, demanded said certificate from the Dickson's, which they refused to surrender, giving no reasons therefor, and that in conversation with them, they said they had sold the said note without recourse, but they had made no sale or transfer of said stock, and had not agreed for any such sale or transfer in the sale and assignment of said note, which was objected to, and the objection was sustained and properly excepted to.

This presents the question whether a husband, when he acts as agent for his wife, in the transaction of her business, is a competent witness for the wife, in a suit by the wife, to prove the transactions of such agency.

We find in the Statute (2 G. & H.) the following clause:

Sec. 240. Husband and wife are incompetent witnesses, for or against each other, and they can not disclose any conversation from one to the other, made during the existence of the marriage relation, whether called as a witness, while that relation exists, or afterward, &c.

This is a plain provision of the statute, and can not be controlled by the rule laid down in *Starkey on Evidence*, on pages 139 to 143. Moreover, the view we have already taken of the law, would render this evidence immaterial.

It is also urged that the Court erred in permitting Mr. Dickson to testify that he told Griffin's agent, pending the negotiations, and when he purchased the $1,367.53 note for Griffin, that the Dicksons held the certificate of stock in controversy as collateral for the security of the payment of said note.

We think this was important for the purpose of showing that Griffin had notice that there was such security when he purchased the note.

The judgment is affirmed.

---

NOTE.—*Admissions*—Declarations of an assignor, of a personal contract, or chattel, if made while the assignor remained in possession, although after the execution of the assignment, are admissible in evidence to characterize the transaction. 10 *N. Y. Ct. Apps*, 309. See also 1 *Greenleaf Ev.*, *12th Ed., p.* 218, *et seq and notes.*

The admission of distinct facts, during negotiation for a settlement, are always competent evidence against the party making them. *Ct. Apps.* 1864, 1 *Keyes*, 495.

The admission of a party should be received with caution, but the Court will not interfere with the finding of a jury, on such testimony. 2 *N. Y. Leg. Obs.*, 330.

Admissions or declarations are competent evidence against parties where parol evidence of the facts sought to be shown by such would be competent. 46 *Barb.*, 158.

The admissions and declarations of an agent are admissible against his principal only, when they are made at the time of the transaction. 2 *N. Y., Code R.*, 31.

The declarations of an assignor, for the benefit of creditors, made after the assignment, and while in possession of the assigned property, as to the object of the assignment, are admissible against the assignor, and those claiming uuder the assignment. 10 *N. Y.*, 6 *Seld.*, 309.

*Assignments*—Vested rights *ad rem*, and *in re*, and possibilities coupled with an interest, and claims growing out of and adhering to property, may pass by assignment. 1 *Peters.*, 193.

*Debt*—Where collateral security is given to secure the payment of a debt, equity will consider such security a *trust*, created for the better protec- of the debt. *Burroughs* v. *United States*, 2 *Pa.*, 569, *S. P.*; *United States* v. *Sturges*, 1 *Pa.*, 525.

*Husband and wife—Agency*—It makes no difference, *at what time the relation* of husband and wife *commenced*, the principle of exclusion being applied in its full extent, wherever the interests of either of them are directly concerned. 1 *Greenleaf Ev.*, 12th Ed., p. 390.

The husband can not be a witness for or against his wife, in a question touching her separate estate, even though there are other parties, in respect of whom he would be competent. *Same, 393, and see authorities cited.*

But where the interest is contingent, and uncertain, he is admissible. *Richardson* v. *Learned*, 10 *Pick.*, 261. *See further Reeves' Dom. Rel.*, p. 292, *and notes.*